**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **C.C., a minor child, through** | ) | |
| **SHANNON WARD, his mother and** | ) | |
| **next friend,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **No. 3:09-0246** |
| **v.** | ) | **Judge Nixon** |
| | ) | **Magistrate Judge Brown** |
| **STATE OF TENNESSEE;** | ) | |
| **TENNESSEE DEPARTMENT OF** | ) | |
| **CHILDREN'S SERVICES;** | ) | |
| **VIOLA MILLER, COMMISSIONER** | ) | |
| **OF TENNESSEE DEPARTMENT OF** | ) | |
| **CHILDREN'S SERVICES, in her** | ) | |
| **official capacity;** | ) | |
| **LARRY STAPLETON, in his personal** | ) | |
| **capacity; and BARRY BROWN, in his** | ) | |
| **personal capacity,** | ) | |
| | ) | |
| *Defendants*. | ) | |

**ORDER**

Pending before the Court is Defendants State of Tennessee, State of Tennessee

Department of Children's Services ("DCS"), and Viola Miller's ("State Defendants") First

Motion to Dismiss (Doc. No. 17) and Memorandum in Support (Doc. No. 18), as well as State

Defendants' Motion to Dismiss the Amended Complaint against State Defendants ("State

Defendants' Motion") (Doc. No. 32) and Memorandum in Support (Doc. No. 33). Plaintiff filed

an Amended Complaint (Doc. No. 23), Response in Opposition to State Defendants' First

Motion to Dismiss (Doc. No. 24), and Memorandum in Support (Doc. No. 25). Plaintiff also

filed a Response in Opposition to State Defendants' Motion to Dismiss the Amended Complaint

(Doc. No. 35) and Memorandum in Support (Doc. No. 35). State Defendants then filed a Reply

1

to Plaintiff's Response. (Doc. No. 36.) For the reasons stated below, State Defendants' Motions to Dismiss are **GRANTED IN PART** and **DENIED IN PART**.

Also pending before the Court is Defendant Brown's Motion to Dismiss (Doc. No. 20), to which Plaintiff filed a Response in Opposition (Doc. No. 26) and Memorandum in Support (Doc. No. 27). Defendant Brown also filed a Motion and Memorandum to Dismiss Plaintiff's Amended Complaint (Doc. No. 38), and Plaintiff filed a Response in Opposition (Doc. No. 39) and Memorandum in Support (Doc. No. 40). For the reasons stated below, Defendant Brown's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND

### A. Factual Background[1]

At the time when the incidents in this case occurred, Plaintiff, who suffers multiple mental impairments that substantially limit his major life activities, was in the custody of DCS and was a resident at Wilder Youth Development Center ("Wilder") in Somerville, Tennessee, pursuant to a state court order. Wilder is operated by DCS, Tennessee's public child-welfare agency, whose primary place of business is Nashville, Tennessee. Defendant Miller is the Commissioner of DCS and is responsible for the administration of both DCS and Wilder.

On March 12, 2008, Plaintiff was assigned to the Behavior Management Unit at Wilder, which serves individuals who are unable to control their behavior sufficiently to adjust to the regular treatment program. At approximately 1:30 p.m., Plaintiff was placed in a cell in the Problematic Segregation Unit. At that time, a nurse examined Plaintiff and noted no injuries.

---

[1] All facts are drawn from Plaintiff's First Amended Complaint (Doc. No. 23) unless otherwise noted.

Around 4:20 p.m., Defendant Stapleton, an employee of DCS, entered Plaintiff's cell and choked Plaintiff. Defendant Stapleton also threw Plaintiff against the wall, and Plaintiff landed on the floor. While Plaintiff was on the floor, Defendant Brown, another employee of DCS, entered Plaintiff's cell. Defendant Brown grabbed the back of Plaintiff's head and slammed Plaintiff's face into the floor. Defendant Stapleton then placed rings on his fingers and slapped, punched, and kicked Plaintiff numerous times. Defendant Brown also slapped, punched, and kicked Plaintiff numerous times. During this physical attack, Defendants Brown and Stapleton made statements to Plaintiff indicating that the attack was related to his previous display of disability-related behavior that resulted in Plaintiff's placement in the Problematic Segregation Unit. After the attack, Defendants Brown and Stapleton instructed Plaintiff to take off his clothes and wash them. They then instructed Plaintiff to shower, wash off the blood, and put on clean clothes. Defendants Brown and Stapleton cleaned the cell where Plaintiff had been placed and placed Plaintiff in a different cell on the other side of the unit.

A nurse evaluated Plaintiff at around 7:00 p.m., two-and-a-half hours after Plaintiff's injuries occurred. At approximately 9:30 p.m., five hours after Plaintiff was injured, Plaintiff was taken to the emergency room for further evaluation. Plaintiff suffered bodily injuries to his left arm, head, left eye, left cheek, nose, lips, and teeth. Plaintiff continues to experience emotional distress from the attack.

Plaintiff alleges that State Defendants did not have appropriate policies and procedures in place regarding treatment of, discrimination against, and medical care for individuals with disabilities at Wilder. Plaintiff also alleges that Defendants Stapleton and Brown were not appropriately trained regarding discrimination against, treatment of, and medical care for individuals with disabilities. Further, Defendants Stapleton and Brown engaged in discrimination

3

against Plaintiff because of his disability in their attack on him and subsequent failure to obtain timely medical care. Lastly, Plaintiff alleges that State Defendants allowed Defendants Stapleton and Brown to continue working with vulnerable, disabled individuals at Wilder, despite numerous special investigation unit referrals for both Defendants prior to the attack.

Plaintiff claims he is entitled to relief under the Eighth and Fourteenth Amendments of the United States Constitution, the Americans with Disabilities Act ("ADA") and § 504 of the Restoration Act of 1973, and 42 U.S.C. § 1983. Plaintiff seeks both compensatory damages and injunctive relief against State Defendants, as well as compensatory and punitive damages from Defendants Stapleton and Brown.

### B.  Procedural  Background

Plaintiff filed the Complaint (Doc. No. 1) in this case on March 12, 2009. State Defendants filed their first Motion to Dismiss (Doc. No. 17) and Memorandum in Support (Doc. No. 18) on May 28, 2009. Defendant Brown filed his first Motion to Dismiss (Doc. No. 20) on June 11, 2009. On June 30, 2009, Plaintiff filed a First Amended Complaint against all Defendants. (Doc. No. 23.) On the same day, Plaintiff filed a Response in Opposition to State Defendants First Motion to Dismiss (Doc. No. 24) and Memorandum in Support (Doc. No. 25), as well as a Response in Opposition to Defendant Brown's Motion to Dismiss (Doc No. 26) and Memorandum in Support (Doc. No. 27).

Defendant Stapleton filed an Answer to Plaintiff's First Amended Complaint (Doc. No. 31) on August 3, 2009. On August 13, 2009, State Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 32) and Memorandum in Support (Doc. No. 33). Plaintiff filed a Response in Opposition (Doc. No. 34) and Memorandum in Support (Doc. No. 35) on August 26, 2009. Defendant Brown filed a Motion and Memorandum to Dismiss

4

Plaintiff's Amended Complaint (Doc. No. 38) on September 18, 2009.  Plaintiff filed a Response

in Opposition (Doc. No. 39) and Memorandum in Support (Doc. No. 40) on October 5, 2009.

## II.    LEGAL STANDARD

To withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must allege

"[e]nough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007).  The Supreme Court recently clarified the *Twombly*

standard, stating "[a] claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  Plausibility requires "[m]ore than a

sheer possibility that a defendant has acted unlawfully."  *Id.*  A complaint that pleads facts

"'[m]erely consistent with' defendant's liability . . . 'stops short of the line between possibility

and plausibility' of entitlement to relief."  *Id*. (quoting *Twombly,* 550 U.S. at 546).  The moving

party has the burden of proving that Plaintiff has not stated a claim.  *Total Benefits Planning

Agency v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008).

When ruling on a defendant's motion to dismiss, the Court "[c]onstrue[s] the complaint

liberally in the Plaintiffs' favor and accept[s] as true all factual allegations and permissible

inferences therein."  *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994).  The Court

must allow "[a] well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual

proof of those facts is improbable."  *Twombly,* 550 U.S. at 556.  The Court is not required,

however, to accept as true "[a] legal conclusion couched as a factual allegation."  *Papasan v.

Allain,* 478 U.S. 265, 286 (1986).

5

## III.  ANALYSIS

State Defendants request that the Court dismiss all of Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim and for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Defendant Brown asks the Court to dismiss all the claims against him for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and to dismiss the remaining claims against him for improper venue under Fed. R. Civ. P. 12(b)(3).

### A.  Plaintiff's Constitutional Claims

Defendants ask the Court to dismiss Plaintiff's claims under the Eighth and Fourteenth Amendments for failure to state a claim.  Specifically, Defendants argue that Plaintiff's has not alleged conduct that violates either of the latter constitutional provisions, and that Plaintiff is not entitled to relief under § 1983.  For the reasons stated below, the Court finds that Plaintiff has adequately pled violations of the Eighth and Fourteenth Amendments—a determination relevant relief under § 1983 as well as relief under the ADA and Restoration Act—but that only monetary relief against Defendant Brown is available to Plaintiff pursuant to § 1983 for these violations.

### i.  Plaintiff's Eighth Amendment Claims

Defendants ask the Court to dismiss Plaintiff's Eighth Amendment claim for failure to state a claim.  Specifically, Defendants argue that Eighth Amendment claims are only cognizable when the punishment imposed is the result of a criminal proceeding.  (Doc. No. 18 at 5, Doc No. 20.)  State Defendants further argue that, even if the Eighth Amendment applies in this situation, they did not have a "sufficiently culpable state of mind."  (Doc. No. 18 at 5.)  Plaintiff argues that his involuntary confinement is also contemplated under Eighth Amendment doctrine.  (Doc. No. 25 at 3.)

6

Defendants have not met their burden of showing that Plaintiff does not allege a plausible claim under the Eighth Amendment. Defendants' first argument relies on *Ingraham v. Wright*, 430 U.S. 651 (1977), for the proposition that the Eighth Amendment only applies to people convicted of crimes. (Doc. No. 18 at 5.) Defendants, however, mischaracterize the holding in *Ingraham*. The Supreme Court's explicit holding in *Ingraham* was that "[t]he Eighth Amendment does not apply to the paddling of children as a means of maintaining discipline in public schools." *Id.* at 664. Although the Court recognized that most situations in which the Eighth Amendment applied would be for criminal punishments, the Court specifically noted that some punishments not labeled criminal "may be sufficiently analogous to criminal punishments in the circumstances in which they are administered to justify application of the Eighth Amendment." *Id.* at 669 n.37. The *Ingraham* Court further noted that it was not considering whether a person involuntarily confined to a mental institution or juvenile institution could claim Eighth Amendment protection. *Id.* As Plaintiff was involuntarily confined to a juvenile institution, Defendants have not established that the Eighth Amendment would necessarily be inapplicable to his situation.

State Defendants additionally argue that they did not have a "sufficiently culpable state of mind" to support an Eighth Amendment claim. (Doc. No. 18 at 5.) To establish an Eighth Amendment violation, a defendant must have been "deliberately indifferent" to the plaintiff's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). A defendant's mere "negligence or carelessness" is not enough to satisfy this state-of-mind requirement; however, the plaintiff need not show "purpose[fulness] of causing harm" or "knowledge that harm will result." *Howard v. Grinage,* 82 F.3d 1343, 1352 (6th Cir. 1996) (quoting *Farmer,* 511 U.S. at 835). "Deliberate indifference" is the "equivalent of recklessly disregarding" a risk of harm. *Id.*

7

State Defendants' argument fails because, other than citing the rule requiring a culpable state of mind, State Defendants provide no arguments to support a finding that Plaintiff's factual allegations do not show that State Defendants acted with "deliberate indifference" toward Plaintiff. For example, State Defendants fail to explain why Plaintiff's allegation that State Defendants allowed Defendants Brown and Stapleton to continue working with vulnerable individuals despite multiple special investigation unit referrals prior to the attack could not rise to the level of "reckless disregard" of the risk of harm to Plaintiff. State Defendants' bare assertion that physical injuries arising from the incidents alleged in this case "were not part of any state-sanctioned punishment" (Doc. No. 18 at 5) does not address whether Plaintiff's allegedly unconstitutional treatment was the product of "deliberate indifference" or "reckless disregard." Additionally, Plaintiff alleges that Defendants Brown and Stapleton beat him "maliciously and sadistically." (Doc. No. 23 at 10.) Accordingly, the Court declines to dismiss Plaintiff's Eighth Amendment claims under Fed. R. Civ. P. 12(b)(6).

ii.    *Plaintiff's Fourteenth Amendment Claims*

Defendants ask the Court to dismiss Plaintiff's Fourteenth Amendment claims against them for failure to state a claim. Specifically, State Defendants argue that they were not involved in any acts that denied Plaintiff's right to due process. (Doc. No. 18 at 5.)

When a state holds a person involuntarily in custody, the state has a "duty to assume some responsibility for his safety and general well-being" under the Due Process Clause of the Fourteenth Amendment. *DeShaney v. Winnebago Cty. Soc. Servs. Dep't,* 489 U.S. 189, 198-99 (1989) (citing *Youngberg v. Romeo,* 457 U.S. 307, 317 (1982)). Substantive due process is meant to protect citizens from the "arbitrary exercise of government power." *Claybrook v. Birchwell,* 199 F.3d 350, 359 (6th Cir. 2000). A state's act that is merely negligent does not

8

implicate the Due Process Clause.  *Daniels v. Williams,* 474 U.S. 327, 328 (1986).  Actions that

"shock the conscience," however, deny victims their "fundamental substantive due process."

*Claybook,* 199 F.3d at 359 (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998)).

When the implicated state has a "[r]easonable opportunity to deliberate various alternatives prior

to electing a course of action . . . [the state's] actions will be deemed conscience-shocking if they

were taken with 'deliberate indifference' towards the plaintiff's federally protected rights."  *Id.*

The Sixth Circuit noted in *Claybrook* that state action would meet this test in most situations

where corrections officials ignored an inmate's "serious medical needs."  *Id.*

State Defendants' argument fails because they do not provide adequate support for their

argument that they were not involved in acts that denied Plaintiff due process under the

Fourteenth Amendment.  Plaintiff alleges that State Defendants failed to provide appropriate

policies, procedures, and training to Defendants Stapleton and Brown.  (Doc. No. 23 ¶ 80.)

Plaintiff also alleges that State Defendants allowed Defendants Brown and Stapleton to work

with vulnerable individuals despite multiple referrals of both defendants to the special

investigation unit and that Defendants Stapleton and Brown failed to provide timely medical

treatment for Plaintiff's injuries.  *Id.*  State Defendants' Motion does not explain why these

factual allegations are inadequate to show that the State's involvement in the actions of

Defendants Brown and Stapleton did not rise above the level of negligence.  Nor does Defendant

provide a basis for his assertion that Plaintiff has failed to state a Fourteenth Amendment claim

for which relief can be granted.  Accordingly, the Court does not dismiss Plaintiff's Fourteenth

Amendment claims under Fed. R. Civ. P. 12(b)(6).

   iii.  *Plaintiff's Availability to Obtain Relief under § 1983*

Defendants ask the Court to dismiss Plaintiff's constitutional claims on the basis that there is no relief available under § 1983, such that dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate. State Defendants argue that Plaintiff's Amended Complaint does not identify a concrete right that has been violated or state a cognizable legal theory. (Doc. No. 18 at 9.) Defendants also argue that Plaintiff does not have a claim because § 1983 does not provide for liability based solely on the basis of respondeat superior. (Doc. No. 18 at 8, Doc. No. 20 at 3.)

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . [or] suit in equity." 42 U.S.C. § 1983. A § 1983 plaintiff must establish "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Street v. Corrections Corporation of America*, 102 F.3d 810, 814 (6th Cir. 1996) (quoting *Simescu v. Emmet County Dept. of Social Servs.,* 942 F.2d 372, 374 (6th Cir.1991)).

As explained above, State Defendants failed to meet their burden of showing that Plaintiff did not allege a plausible claim under Eighth Amendment or Fourteenth Amendment (or under the ADA or Restoration Act, discussed below). Accordingly, the Court finds that Plaintiff adequately alleged deprivation of rights secured by the Constitution or federal law.

Defendants' argument regarding respondeat superior also fails. Courts may not impose § 1983 liability solely on the basis of respondeat superior. Instead, the plaintiff must make a showing that "[t]he supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley,* 7229 F.2d 416, 421 (6th Cir. 1984). At a minimum, this requirement includes a showing that the official "[i]mplicitly authorized,

10

approved or knowingly acquiesced in the unconstitutional conduct . . . ." *Id.* Actions taken pursuant to a policy or custom of the state or because of the inadequacy of an employee's training may satisfy this requirement. *Street*, 102 F.3d 810 at 817-18. Here, Plaintiff does not allege liability of State Defendants solely on the basis of respondeat superior. Instead, Plaintiff alleges that the State of Tennessee, DCS, and Defendant Miller did not properly train Defendants Brown and Stapleton, and that their treatment of Plaintiff was "[p]art of a pattern and practice of physical attacks on individuals with disabilities who have been adjudicated to Wilder . . . ." (Doc. No. 23 ¶¶ 63, 66.) State Defendants fail to establish that the state's inadequate policies, procedures and training related to individuals with disabilities do not indicate that the state authorized, approved, or knowingly acquiesced in the actions of Defendants Brown and Stapleton. *See Street*, 102 F.3d 810 at 817-18.

However, Plaintiff's § 1983 claims for monetary relief against the State and DCS should be dismissed, on the basis of the language of § 1983 and the Eleventh Amendment. Section 1983 provides a cause of action against "persons" who, acting under color of state law, violate a plaintiff's federal constitutional rights. 42 U.S.C. § 1983. The Supreme Court has held that the states and state officials acting in their official capacities are not "persons" under § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and "[a]s such, it is no different from a suit against the State itself." *Id.* Two limitations in the Supreme Court's decision in *Will* are relevant to this case. First, *Will* does not shield public officials sued in their individual capacities from liability. *Gean v. Hattaway,* 330 F.3d 758, 766 (6th Cir. 2003). Officials sued in their individual capacities are considered "persons" under § 1983 even when carrying out a government function. *Id.* Second, *Will* did not alter the

11

principle of *Ex Parte Young* that allows suits against state officials in their official capacities for prospective injunctive relief, as such actions are not considered to be against the state. *Id.* at 767 (citing *Will*, 491 U.S. at 71 n.10). Thus, under § 1983, both injunctive and monetary relief may be sought against Defendant Brown, sued in his individual capacity, but not against Defendant Miller, who may only be sued for injunctive relief, as Plaintiff's claims are against her in her official capacity. Defendant Brown's claim that he is entitled to sovereign immunity because he is a state actor (Doc. No. 20 at 3) does not affect this determination as he is sued not in his official capacity, but in his individual capacity.

*iv.    Plaintiff's Ability to Obtain Injunctive Relief*

State Defendants argue that Plaintiff does not have standing to seek injunctive relief. Specifically, State Defendants argue that an incarcerated person's claim for prospective injunctive relief becomes moot when that person is no longer incarcerated. (Doc. No. 33 at 7.) State Defendants further argue that Plaintiff lacks standing to seek prospective injunctive relief on behalf of other individuals. *Id.*

Plaintiff argues that he experiences ongoing adverse effects of State Defendants' alleged discrimination because State Defendants' actions stigmatized him "[a]s an inferior member of the community . . . ." (Doc. No. 35 at 13.) Plaintiff further argues that injunctive relief will erase "[t]he stigma that Plaintiff and other individuals with disabilities bear due to the current discrimination which exists in the operation of [the program at Wilder]." *Id.*

The Court agrees that Plaintiff's request for injunctive relief on his own behalf for his physical injuries is moot because Plaintiff is no longer housed at Wilder. An incarcerated person's claim for prospective injunctive relief is moot once that person is no longer housed at the facility where the alleged violation occurred. *See Abdur-Rahman v. Mich. Dep't of Corrs.,*

12

65 F.3d 489, 491 (6th Cir. 1995). Since Plaintiff is no longer a resident at Wilder and cannot be involuntarily adjudicated back to Wilder,[2] his claim for prospective relief is dismissed as moot.

Furthermore, even if Plaintiff characterizes his injury as an ongoing stigmatic one (Doc. 35 at 12), he lacks standing to pursue injunction. To have standing to bring a claim, a plaintiff must establish three elements: (1) the plaintiff must have suffered an "injury in fact"; (2) a causal connection must exist between the injury and the challenged action of the defendant; and (3) it must be likely that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). "'Absent a sufficient likelihood that he will again be wronged in a similar way,' a plaintiff is not entitled to injunctive relief." *Hange v. City of Mansfield, Ohio,* No. 07-3143, 2007 WL 4437786, at *4 (6th Cir. Dec. 13, 2007) (quoting *City of L.A. v. Lyons,* 461 U.S. 95, 111 (1983). Even when a plaintiff previously was subject to unlawful actions, past exposure to illegal conduct does not grant a plaintiff standing for injunctive relief if no continuing adverse effects are present. *Fieger v. Mich. Supreme Court,* 553 F.3d 955, 966 (6th Cir. 2009).

Courts have recognized that plaintiffs may have standing for an injunction based on a stigmatic injury. Discrimination may injure a plaintiff by stigmatizing the plaintiff as "innately inferior." *Heckler v. Mathews,* 465 U.S. 728, 739-40 (1984). A stigmatic injury exists when the plaintiff suffers the injury "[a]s a direct result of having personally been denied equal treatment." *Allen v. Wright,* 468 U.S. 737, 756 (1984). An "abstract stigmatic injury" to the plaintiff, however, is not enough to confer standing. *Smith v. City of Cleveland Heights,* 760 F.2d 720, 723 (6th Cir. 1985) (quoting *Allen,* 468 U.S. at 755). Instead, the plaintiff must show that his injury is "peculiar to himself or a distinct group of which he is a part." *Id.* (quoting *Gladstone,*

---

[2] Plaintiff has reached the age of eighteen since filing his First Amended Complaint. (Doc. No. 35 at 11.)

13

*Realtors v. Village of Bellwood,* 441 U.S. 91, 100 (1979)). The plaintiff must also show that he

is "personally subject to the challenged discrimination." *Id.* (quoting *Allen,* 468 U.S. at 755.

Here, Plaintiff may not establish the elements as the plaintiff in *Smith*, *supra*. In *Smith*, a

case on which Plaintiff relies, plaintiff was a black man living in Cleveland Heights, a city where

plaintiff alleged municipal policies capped the racial composition at 75% white and 25% black

starting in 1976, two years after Smith moved there. *Smith*, 760 F.2d at 722. The Sixth Circuit

found that Smith established injury in fact on the basis that, even though Smith himself had not

been excluded from the city, "[h]e lives out daily routines and neighborhood interactions as a

member of a race which his own City labels as undesirable for purposes of housing policy." *Id.*

In *Smith*, the court was able to distinguish plaintiff's situation from that of plaintiffs in *Allen*,

where Justice O'Connor found that parents of black public school students lacked standing to

challenge the IRS' enforcement of denials of tax-exempt status to racially discriminatory private

schools, and likened plaintiffs' stigma to that of a Hawaii resident's injury from discrimination in

Maine. *Id.* at 723. The Sixth Circuit emphasized that Smith's stigmatic injury was neither

attenuated nor generalized as in *Allen*, but that the "source of his injury is a local government

policy" and "[t]he situs of the injury is the very community in which he lives." *Id.* Plaintiff in

the instant matter, however, is no longer a resident of Wilder, and may not be ordered to return

there on account of reaching the age of majority. Unlike the plaintiff in *Smith*, he does not claim

to face a pervasive atmosphere of discrimination or badge of inferiority within his present

community that would constitute a stigmatic injury. Although this Court does not question

Plaintiff's allegation that he suffers lasting emotional distress from his experience at Wilder, any

stigma he presently faces may not be fairly traced to Defendants' conduct at Wilder so as to

satisfy the second prong of the standing analysis, causation, either.

14

Additionally, unlike in *Smith*, prospective injunctive relief will not erase the source of any stigmatic injury Plaintiff may suffer in satisfaction of the third element of standing, redressability. In *Smith*, the removal of the city's discriminatory housing policy by means of injunction was considered satisfactory redress because it would "erase the source of Smith's stigmatic injury." *Id.* At 724. Here, however, the removal of the policy might erase the source of some stigmatic injury to disabled individuals who are currently housed at Wilder, but not to Plaintiff, who is permanently removed from that community. Rather, Plaintiff's alleged physical injuries and continuing emotional distress may be redressed by the monetary damages he seeks.

Finally, the Court agrees with State Defendants' assertion that Plaintiff may not seek prospective injunction relief on behalf of other individuals. (Doc. No. 33 at 7.) The Supreme Court has held that a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Plaintiff's argument in response to this element of Defendants' Motion is that the ADA "creates the possibility that successful plaintiffs may establish permanent changes . . . to better accommodate the disabled," and that those who sue under it "do so in the role of private attorneys general." *Walker v. Carnival Cruise Lines*, 107 F.Supp.2d 1135, 1143 (N.D.Cal. 2000). The *Walker* court, however, was concerned with enforcing a forum-selection clause, and does not speak to the ability of a disabled individual to obtain an injunction on behalf of similarly-situated others. Lacking any other support for Plaintiff's claim for injunctive relief on behalf of others, the Court again finds that injunctive relief is not available against State Defendants.

In sum, the effect of limitations on § 1983 and the unavailability of injunctive relief to Plaintiff in this Court requires the dismissal of Plaintiff's constitutional claims against State

15

Defendants brought under § 1983, but to allow his claims against Defendants Brown and Stapleton for monetary damages to proceed.

### B.  Plaintiff's ADA and Rehabilitation Act Claims

Defendants also urge the Court to dismiss Plaintiff's claims under the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act for failure to state a claim. Specifically, Defendants argue that Plaintiff failed to state a claim under the ADA because Plaintiff does not allege that he was excluded from any program or discriminated against by failure to accommodate his disabilities.  (Doc. No. 33 at 8, Doc. No. 38 at 2.)  Defendants further argue that Plaintiff failed to state a claim under § 504 because Plaintiff did not identify a program or activity from which he was excluded.  (Doc. No. 33 at 9, Doc. No. 38 at 2.)  State Defendants additionally argue that Plaintiff does not allege any discriminatory actions that State Defendants took against Plaintiff.  (Doc. No. 33 at 9.)  Lastly, Defendants argue that the Court should dismiss the ADA claims against Defendant Brown and Defendant Miller because the ADA does not provide a cause of action against individuals.  (Doc. No. 18 at 6, Doc. No. 20.)

### i.  Plaintiff's ADA and § 504 Claims against All Defendants

The Court finds that Defendants did not meet their burden of showing that Plaintiff failed to state a claim under the ADA or § 504 of the Rehabilitation Act.  The Court analyzes Plaintiff's ADA and § 504 claims together.  The Sixth Circuit recognizes that the only difference between the statutes is the Rehabilitation Act's federal funding requirement.  *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452 (6th Cir. 2008).  Aside from that difference, the "[r]each and requirements of both statutes are precisely the same."  *Id.* (quoting *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 146

16

n.6 (2d Cir. 2002)).  As Plaintiff alleges that Wilder receives federal funding, it is appropriate to address these claims simultaneously.  *See id.*; (Doc. No. 23 ¶ 79).

Title II of the ADA states that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006).  A prima facie case under Title II of the ADA requires a plaintiff to establish that "(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability."  *Dillery v. City of Sandusky,* 398 F.3d 562, 567 (6th Cir. 2005) (quoting *Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir. 2003)).

Defendants do not meet their burden of showing that Plaintiff has failed to state a claim under the ADA and the Rehabilitation Act.  First, State Defendants argue that Plaintiff's First Amended Complaint does not state a claim under the ADA because Plaintiff does not "[a]llege any specific program from which he was excluded from participating or denied the benefits of . . . ."  (Doc. No. 33 at 8.)  Defendant Brown argues that Plaintiff fails to state a claim under the ADA or the Rehabilitation Act for the same reason.  (Doc. No. 38.)  Contrary to Defendants' assertion, however, Plaintiff need not establish that he was excluded from participating in or was denied the benefits of a state program.  A plaintiff may meet the third prong of the ADA/Rehabilitation Act test by alleging that the plaintiff was "[s]ubjected to discrimination under the program solely because of her disability."  *Dillery,* 398 F.3d 562, 567.  Thus, Plaintiff's allegations (described below) that he was discriminated against at Wilder solely because of his disability are adequate.

17

State Defendants' second argument—that Plaintiff's First Amended Complaint fails to state a claim under the Rehabilitation Act because Plaintiff does not allege "[d]iscriminatory actions of any of the State Defendants" (Doc. No. 33 at 9)—also fails. Plaintiff does allege that State Defendants engaged in a pattern and practice of discriminatory action toward individuals with disabilities in their operation of Wilder, resulting in Defendants Brown and Stapleton's attack on Plaintiff on the basis of his disability-related behavior. Specifically, Plaintiff alleges that State Defendants failed "[t]o appropriately train Defendants Stapleton and Brown regarding discrimination against, treatment of, and medical care for individuals with disabilities at Wilder." (Doc. No. 1 ¶ 66.) Plaintiff also alleges that State Defendants did not "[h]ave appropriate policies and procedures in place regarding discrimination against, treatment of, and medical care for individuals with disabilities at Wilder . . . ." (Doc. No. 23 ¶ 65.) Finally, Plaintiff alleges that State Defendants allowed "[D]efendants Brown and Stapleton to continue working with vulnerable individuals with disabilities at Wilder despite numerous previous special investigation unit referrals for Defendants Brown and Stapleton." (Doc. No. 23 ¶ 67.) Accordingly, the Court does not dismiss Plaintiff's ADA and § 504 claims for failure to state a claim.

ii. *Plaintiff's ADA and Rehabilitation Act Claims against Defendant Brown and Defendant Miller*

Defendants next argue that the Court should dismiss the ADA claims against Defendant Brown and Defendant Miller because the ADA does not provide a cause of action against individuals.

State Defendants' argument that the ADA does not provide a cause of action for individual liability against Defendant Miller fails because Plaintiff sued Defendant Miller in her official capacity, not her individual capacity. Although an individual may not be personally

18

liable for violations of the ADA, cases may proceed where, as here, the individual is being sued in her official capacity. *See Sullivan v. River Valley School Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999) (citing *Wathen v. Gen. Elec. Co.,* 115 F.3d 400, 404 n.6 (6th Cir. 1997)). In fact, in the related Title VII context, the Tenth Circuit has found that cases *must* be brought against individuals in their official capacities rather than their individual capacities. *Sauers v. Salt Lake City*, 1 F.3d 1122, 1125 (10th Cir. 1993) (cited in *Wathen*, 115 F.3d at 404 n.6).

For this reason, the Court finds that Defendant Brown may not be held individually liable under the ADA for the reasons stated above. Given that the "[r]each and requirements of [the ADA and Restoration Act] are precisely the same" except for the Restoration Act's federal funding requirement, *S.S. v. E. Ky. Univ.,* 532 F.3d 445, 452 (6th Cir. 2008), Defendant Brown may not be held individually liable under the Restoration Act. Both the ADA and Restoration Act claims against him must be dismissed.

However, State Defendants fail to meet their burden of showing that Plaintiff does not have a claim against Defendant Miller in her official capacity. Nor is Defendant Miller is entitled to qualified immunity from Plaintiff's claims against her. Qualified immunity is meant to protect officials who violated a plaintiff's federally protected right but whose actions were nonetheless reasonable from personal liability for the action because the law violated was not clearly established at the time of the violation. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). A defendant sued in his official capacity, however, may only claim forms of sovereign immunity, not qualified immunity, possessed by the entity of which he is an official. *Kentucky v. Graham,* 473 U.S. 159, 167 (1985); *see Ruffino v. Sheahan*, 218 F.3d 697, 700 (7th Cir. 2000) ("Because the rationale that supports qualified immunity from suit in individual capacity cases is absent in official capacity cases, it is well established that the qualified immunity doctrine does

19

not apply to official capacity claims.").  As Plaintiff sued Defendant Miller in her official capacity, the Court will not dismiss the claims against Defendant Miller on qualified immunity grounds.

  *iii. Implications of Sovereign Immunity for Plaintiff's ADA and Rehabilitation Act Claims*

Defendants argue that they are immune to claims for monetary damages due to the Eleventh Amendment's bar against suits against the states, their agencies, and officers for retrospective relief unless the state has expressly waived its immunity or Congress has expressly abrogated it. *See Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002).  Specifically, State Defendants argue that Tennessee has not waived its immunity and Congress has not abrogated it by enacting any of the civil rights statutes, such that Plaintiff's claims for money damages must be dismissed.  (Doc. No. 18 at 10-11.)  Defendant Brown also argues that he is entitled to sovereign immunity because a suit against a state official in his official capacity is a suit against the state itself.  (Doc. No. 20.)

  Defendants are not entitled to sovereign immunity on Plaintiff's claims under the ADA or the Rehabilitation Act.  The Rehabilitation Act states, "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . ."  42 U.S.C. § 2000d-7.  The Sixth Circuit has held that a plaintiff may sue a state under § 504 because a state's acceptance of federal funds serves as a waiver of the state's Eleventh Amendment immunity with regard to Rehabilitation Act claims.  *Nihiser v. Ohio E.P.A.,* 269 F.3d 626, 628-29 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 2588, 153 L. Ed. 277 (2002).  Similarly, the ADA states that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."  42

U.S.C. § 12202.  The Supreme Court has held that "[i]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  *United States v. Georgia,* 546 U.S. 151, 159 (2006).

As previously explained, State Defendants failed to meet their burden of showing that Plaintiff does not have a claim under the Fourteenth Amendment or under the Eighth Amendment as applied to the states through the Fourteenth Amendment.  As Plaintiff's ADA claims are based on this allegedly unconstitutional conduct, the Court cannot say at this time that Plaintiff is not seeking damages under the ADA for conduct that violated the Fourteenth Amendment.  Accordingly, the Court will not dismiss Plaintiff's ADA or Rehabilitation Act claims against State Defendants on sovereign immunity grounds.  However, as described in Part A.iv., *supra*, the Court will only hear Plaintiff's claims for monetary damages as his claims for injunctive relief must be dismissed. Because the Court has already determined that Defendant Brown may not be sued in his individual capacity under the ADA or Restoration Act, his claim of entitlement to Eleventh Amendment sovereign immunity is moot.

C.      Venue

Defendant Brown urges the Court to dismiss the claims against him under Fed. R. Civ. P. 12(b)(3) for improper venue.  Specifically, Defendant Brown argues that the Middle District of Tennessee is an improper venue because he and Plaintiff both reside in West Tennessee, and Wilder is located in West Tennessee.  (Doc. No. 28.)

Defendant Brown's argument fails because venue is proper in the Middle District of Tennessee.  In a civil action where the court's jurisdiction is not founded solely on diversity of citizenship, the plaintiff may bring the action in "[a] judicial district where any defendant resides,

21

if all defendants reside in the same State . . . ." 28 U.S.C. § 1391(b). The Court has jurisdiction over the case because it involves questions of federal law. State Defendants reside in the Middle District of Tennessee, and all Defendants reside in the state of Tennessee. (Doc. No. 23.) Accordingly, the Court will not dismiss Plaintiff's claims against Defendant Brown for improper venue.

IV.    CONCLUSION

The Court therefore **GRANTS** State Defendants' Motions to Dismiss in part and **DISMISSES** Plaintiff's claims as to any injunctive relief, or relief for violations of the Eighth or Fourteenth Amendments pursuant to § 1983, against State Defendants. The Court **DENIES** State Defendants' Motions to Dismiss in part with respect to claims for monetary relief under the ADA or § 504 of the Restoration Act.

The Court **GRANTS** Defendant Brown's Motions to Dismiss in part and **DISMISSES** Plaintiff's claims as to any injunctive relief, or relief under the ADA or § 504 of the Restoration Act, with respect to Defendant Brown. The Court **DENIES** Defendant Brown's Motions to Dismiss in part with respect to claims for monetary relief under § 1983.

It is so ORDERED.

Entered this the ___21st_____ day of _____September_____, 2010.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

22